We have one last case where I believe both counsel are here in person. It's United States v. Shibley. I believe the appellant's counsel, Ms. Jones, will be starting us off. And as you've already seen, if you'd give us your name and how much time you'd like to reserve for rebuttal, you may proceed when you're ready. Thank you, Your Honor. Cynthia Jones for the appellant, Eric Shibley, and I would like to reserve three minutes for rebuttal if possible. So at the heart of this case is whether the government's statements to this court and to the district court that the only purpose in seeking forfeiture funds in the bank accounts is to distribute those funds back to the lenders, the victims of the crimes in this case, means that Mr. Shibley is entitled to have those funds credited towards his restitution obligation. Have those funds, in fact, been distributed to the victims? They have not. They have not. They have not. And what happens if they eventually do? Does this change the posture of what your client's entitled to or not entitled to? It would. And one of the reasons that we're here is that there's no mechanism. If the government pays the lenders back their monies after this proceeding is done and final, there's no mechanism to get credit for Mr. Shibley to his restitution obligation. You can come back to the district court for resentencing because of the change of circumstances? I suppose we could try to do a motion. I've not seen that done. I've not seen a mechanism for this. I've asked my colleagues if they know of a mechanism for this under these kind of unique set of facts. Maybe the government can help us in terms of what might happen if the government does give the money to the victims, then what happens to this? We'd love to know that as well. I mean, I thought they said it. It says if it could exercise its discretion, it's on page 18 of the government's brief, exercise discretion and transfer the forfeited assets to the victim lenders. If that occurs, the government will arrange transfer to the clerk of court. Any such distributions would in turn reduce Shibley's outstanding restitution obligations. So it sounded to me like they were saying they'll do it if they do it. So it begs the question, why aren't they doing that now to save us this proceeding before your honor? Why aren't they paying that back to the lenders? The elephant in the room is there's no question the monies that the government has is the lenders' money, and that money could make the lenders full. It seems like the government's position is if your client was rich enough to have, you know, double the money, right, that the government could take all the funds as forfeiture and then your client could have to pay, and that's their legal position. I'm not sure whether that's right or wrong. It doesn't sound like your client is because your client declared bankruptcy, I think, or something. It doesn't sound like your client is rich enough so the lenders will be left on the hook if, well, maybe they won't because they'll get reimbursed under the small business association or whatever. We'll pay them back, right? So I think the government's position is if we can get double the money, basically this is almost like a double punishment, like the government gets the money and then your client also has to pay them back. Here, won't the lenders automatically be reimbursed because they're guaranteed, right?  Well, some of the lenders. Now, not all of the lenders were government entities and the small business loan association, but I think as part of COVID, you're probably right. Make sure I understand that. I thought all the loans you got were. Under the PPP program, I think they are guaranteed to get that payment back. You're right. So won't it just kind of happen automatically? They're either going to get it through, like, this direct route, or they'll be able to say our creditor didn't pay us and we're guaranteed. That's the whole reason we loan this money is because we're guaranteed. The question is, will Mr. Shibley get credited for his restitution obligation if they're made whole by a third party? I'm not sure the case law settles that for us. And as Your Honor pointed out, if you look at ER 38, the district court judge found Mr. Shibley indigent. And aside from the guarantees, our position is the government could make the lenders whole. They're holding their money. One of the policies of the Department of Justice in their asset forfeiture program is to make victims whole to return money. They will almost certainly make the victims whole just because of the fact that the government has guaranteed these loans. The biggest issue for you is should your client have to pay twice, restitution and forfeiture. But it doesn't sound like – I'm trying to figure out why that's even a practical concern here because if your client's indigent, your client will never actually have to pay this money, right? This $1.8 million or whatever? Well, when my client comes out eventually and tries to rebuild his life, he will have to have a payment program where he has to. Oh, he's going to have that hanging over his head even if he can't pay it, sure. Absolutely. Is it not – the bankruptcy doesn't get rid of this obligation? No, absolutely not. No, the restitution – matter of fact, I am not a bankruptcy attorney. I don't claim to know anything about bankruptcy, but I hired a bankruptcy lawyer to consult me on this, on how this would affect Mr. Shibley's appeal. That's incurred by father, not forgivable in bankruptcy. That's the rule. Yeah, yes, Your Honor. And so I think one of the things that Your Honor could look at is one of the cases that the government depends on is the Bright case. And there the district court asked the government, are there forfeiture funds available for restitution? And the government said no. And I think the difference here is where the government argues that case stands for the proposition that double-dipping can happen when actually what that case stands for is there was forfeiture sought to the Department of Justice – confusing another case – and then there is restitution sought for the FBI. And what Mr. Bright wanted to argue is, is that double-dipping that we've got forfeiture to two separate government entities? That sounds like the collateral source rule. I would say so, Your Honor. Well, collateral source rule works against your client. Collateral source rule allows for double payment. However, here's the difference as I read this case, is that had in Bright had the government said there were forfeiture funds available for restitution, that that would have reduced Mr. Bright's restitution obligation. And I think the difference here is the government's represented that, yes, Mr. Shibley's restitution obligation will be reduced by any payment to the lenders. And what I'm here to advocate on my client's behalf is not to have that hanging over his head, to come to this proceeding and hold the government's feet to do what they've said they're going to do and give the money back to the lenders. They said holding these monies – I think it's at ER-6 – is administratively a minimal cost. Why aren't they just transferring this money back to the lenders? Why do we have to stand here today and argue for that to happen and then take this restitution obligation? For you to prevail, you have to – the government said they will give the money. You're saying we're not going to guarantee they'll do that, but you have to actually show us that the government has an obligation, some sort of legal obligation to actually sort of credit to your client. It's not clear to me that – I mean, it seems to me like under our Davis case, you basically – if you commit a crime, if you commit fraud like this, you can essentially end up owing double. I mean, you essentially have to – you get the money forfeited if you still happen to have them and you haven't spent them yet, and you also end up owing the money. And it seems to me that that's just – our case law is okay with that. So what is your legal basis for – aside from saying, well, they said they'll give us the money. They should just do it now. Yeah, I think the legal basis – I've addressed Davis to a certain extent to the question of double-dipping. And I think the difference there is that the FBI got restitution. And in DICTA – I may have already mentioned this, but the court was dubious about whether the FBI was really a victim in the first place. But unfortunately for Mr. Davis, he didn't bring up that issue and they didn't reach that issue. It seems to me that the stronger argument – if you were trying to figure out – if it's the federal government, you would say, well, if you've got the entity that gets the restitution and the entity that – the forfeiture will always go to the federal government. So if the entity is also a federal government entity, then that would be the situation where I'd be most sympathetic to say, well, you should only get – why should the government get double? We have private entities. You really – then the argument that they're two separate things – that's why Davis seemed like a better case in some ways than yours because you'd be like, why should the government get double? Nobody's sympathetic until it's the government. You can't blame them, right? But here you've got private entities and you've got the government. And the idea that like you're going to both be fined – if I'm driving recklessly and I run into somebody, I will both have to pay for their damages and probably have to pay a fine to the government. That's kind of not uncommon. Well, I would also say that there's another avenue towards what I'm asking this court to do on behalf of Mr. Shibley, and that's looking at the Bright case. And the Bright case explicitly said – I believe it's at page 1123 – that offsets were explicitly a question we don't reach today, meaning – and what the government's been arguing is a defendant doesn't get an offset for forfeiture monies that go to restitution. That's not automatic. That's not right. That did not get decided in Bright, in which they rely. The government's arguing that in this case, you're saying? Because the government's saying they will give an offset. Well, they're saying on one hand that Bright – they don't have to. That's what they're arguing in their brief. And, yes, they say at some future date they might pay the lenders, but they're not going to credit Mr. Shibley now for that future possibility. But why are we waiting? That is the question. They have the money. We could get this solved now. We could get – you know, Mr. Shibley is going to owe restitution at least in minimum of $250,000 if this money goes back to the lenders. He knows he's on the hook for that when he comes out. He knows when he rebuilds his life he's going to have a payment plan of a quarter of a million dollars. What we're trying to argue is if this money is there, and the difference between Bright and the difference between here is when the government, as an officer of the court, represents they're going to do something, then make them do it. And in Bright, the court said, is there forfeiture funds available for restitution? The government said no. And that goes back to Your Honor saying, well, restitution of forfeiture, double dipping, and Davis. Yes. But under the circumstances where the government says there is no forfeiture funds available for restitution, in that case we wouldn't be here. There would be no offset. But the government has represented otherwise. And I see my time is about – Let me ask Ms. Jones a question. Again, I'm holding you over. I'm sorry. No problem. But you're also arguing in your brief, at least, that your client didn't access funds beyond $254,500. So I think part of your answer to Judge Van Dyke's question, at least I think, is that your client didn't exercise control over amounts beyond that, and therefore he shouldn't be subject to a restitution amount. I mean, maybe that was embedded somehow that maybe I just missed in your answers. So can you respond to that? Absolutely. And I think this is where forfeiture and restitution become so tricky. And how I think about it in my mind is two separate lanes, forfeiture and restitution. They may be two sides of the coin, but they don't cross. And with the forfeiture argument that – and I would look to the Preysad case, this court's decision there, where they were really wrestling with proceeds, which is not relevant here, but they did define what does obtain mean. And under that definition, I would argue Mr. Shibley did not obtain these funds that the government holds. But at the end of the day, it doesn't matter because, sure, let the government get forfeiture orders all they want for money they hold on behalf of the lenders that Mr. Shibley never obtained. I'm not worried about that as long as they do what they say, and in the restitution piece of it for which Mr. Shibley is on the hook, they give the lenders back their money and credit Mr. Shibley against his restitution obligations so that when he comes out and begins to rebuild his life, there's only a quarter of a million sitting there instead of 1.4 that he has to make payments on as an indigent person, as the district court found. And just to be clear, you're not challenging the forfeiture. You're only challenging the restitution. That's correct.  Thank you, Your Honor. Well, thank you, Counselor, for taking you over. We'll make sure and give you some time on rebuttal. Thank you. We'll hear from the government. Good morning, Your Honors. You didn't bring a check this morning, I assume. I did not. May it please the Court, Dave Lieberman for the government. If I could just start out briefly with the last set of questions from Judge Liberti and Judge Fletcher. The forfeiture order has not been appealed in this case. The district judge in that forfeiture order, this is at ER 71, found that Mr. Shibley obtained $2.8 million in defraudulent funds. That was a factual finding. It's in the district court's order. It has not been appealed. To the restitution side, the out-of-pocket loss in this case is $1.4 million. The district court correctly ordered restitution in that amount. To counsel's question, the government has proceeded through forfeiture that's not under review before this court. The funds have now been forfeited to the government. Why isn't the government restoring those to the lenders now? The government waits until there's a final judgment. If this court affirms there's a final judgment, no further proceedings, the department will initiate its restoration process. And then what happens? Yes, Your Honor. Will the government, in fact, credit as against the restitution order the amount that is given to the victims? Yes, this is laid out in 28 CFR Part 9. And how is that going to work if the government does this? Do they go back to the district court and ask the district court to revise the sentence? No, Your Honor. This is also in our asset forfeiture manual, which we cited in our brief. The government instructs the custodian of the money to remit the payments directly to the clerk of court, of the district court, for distribution to the victims in accordance with the restitution order. So that act of remitting the money through this restoration, our forfeited funds through the district court clerk, that is the office that's responsible for calculating Mr. Shibley's outstanding restitution obligation. Is your position that that automatically reduces by that, to that extent, the amount of the restitution award? Yes, because the district court clerk is the one that is in charge of remitting those payments to victims. I apologize to interrupt, but this is related to Judge Fletcher's question. It seems to me that somebody would need to seek to amend the judgment, whether that be Ms. Jones on behalf of her client or the United States. Wouldn't that be the right way to do it? I understand what you're saying. Mr. Shibley, he could send a check for a million dollars, and he would send a check to the clerk, and the clerk would pay that money, and then it would be credited towards his restitution obligation. Correct. But instead, the government, Mr. Shibley, because the government is his friend, the government sends the million dollars, and so that million dollars that the government sends will be credited towards his restitution obligation the same way it would have been as if Mr. Shibley sent it. Correct, Your Honor. In this restoration process, which is detailed in the Asset Forfeiture Manual, which we detail in our brief, has the money going to the clerk of court. The clerk of court is the entity responsible for collecting that money, sending it to the victims named in the restitution order, and recording those distributions and then keeping track of Mr. Shibley's outstanding restitution obligation. So then it would be done on what I would call an accounting level. Correct. An accounting level with the clerk of court, and so that the United States will still have the judgment, and the judgment will still say that restitution was ordered in whatever the M. I'm not good with numbers. That's why I went into law. Thank you, Your Honor. Would be in that amount, and I would suppose maybe the United States would want to have that in case Mr. Shibley ran afoul of the law in the future, and, you know, however that counts. That's correct, Your Honor. It is like an accounting function. The clerk is keeping track of the outstanding restitution obligations. As funds are paid into the clerk and then paid out to the victims, that tally reduces. Now, I am not aware of any circumstance where there's been disputes about clerks of court properly or not properly crediting these payments to outstanding restitution obligations, that they're obviously outside. And I suspect you would have no problem if we were to, let's say we do this in an unpublished memorandum disposition, but nonetheless the disposition of this court, if we were to specify that this is what is supposed to happen. Yeah, correct, Your Honor. And what happens? So far we've been talking about the private victims. What happens to the SBA? So I believe the funds also go back to the SBA through this restoration process. So it goes from one pocket of the government to another pocket of the government? Yes, Your Honor. But this court has encountered cases before where the government agency is the victim and the processes are the same in terms of calculating restitution. I believe if I have the policy in the asset forfeiture manual right, the government prioritizes private victims before reimbursing government victims. I can't say that for certain, but that's... Is it necessary with respect to the, assuming we get there, assuming there's enough money to take care of the private victims and there's money left over then for the SBA, is it necessary to go to the court and say, we, the government, are taking money out of the seized, the forfeited money and we're paying it to the SBA or can they just write it off, period? I don't know the answer to that, Your Honor. But one form or another, that money will be credited to the extent that there's money left over? Because it goes through the restoration process and it's funneling through the clerk of the court. And if there is some situation in the future where there's some dispute between the defendant and the clerk of court, I assume that, I think it was this court's decision in Carter which found some ongoing district court jurisdiction to enforce forfeiture, or excuse me, restitution orders. I assume there's probably some mechanism for the defendant to dispute any accounting. But that is the process that the government, specifically the U.S. Attorney's Office intends to initiate. It goes through a separate office in the Department of Justice, which I am not affiliated with, the Money Laundering and Asset Restitution Section. This is an ordinary process. It's all set out in federal regulation and in the policy manual. And those are the procedures that will happen in the event of an affirmance. So it seems like a very strong argument that it's going to happen and it doesn't sound like we need to do anything. But what is your position on whether it would need to happen? Like what if tomorrow the Department of Justice has decided our government needs more money and so we want to take forfeiture and restitution and basically do what I think it says we can, it's what Davis says can happen, which is in theory you could have it. Now, that would be very mean to victims, right, because oftentimes there won't be any money left for the victims, right, which I assume. But is your position that they could do that? I mean, could the government say? Because that matters, I guess, in the sense of that's, if there is no ability for Mr. Shipley to actually ask for what he's asking, it sounds like there's two things going on. One, he's asking for something that it's going to be taken care of, it's going to work out. But even if it didn't, does he have a cause of action or something? Yeah, and I think that's, so in this speculative world where the department changes its prioritization and says, no, we're not doing restoration victims anymore. Keeping the money for ourselves. Yes. In Carter, this court recognized that, and this is a quote from page 447 of Carter, the government could have chosen to keep the proceeds for itself under the forfeiture statutes because Congress specified that there are two components of a criminal sentence, forfeiture, restitution. Restitution is remedial. Put the victims in their ex-ante position. Forfeiture is punishment. It's a fine. And Congress quite reasonably has chosen to, we want both here. Simply restoring victims to their ex-ante position is not sufficient deterrence. You should have to be punished and receive a monetary punishment. In addition, and that's forfeiture. Your position is, trust us, it's all going to work out well, but even if it didn't, we have the power to do something that you wouldn't want. I might not phrase it exactly like that, but yes, the government could. I can see that the government in certain circumstances might not want to use the forfeited money restitution if, in fact, the defendant is very wealthy. If the defendant is judgment-proof, that's a different question, and that may be what's going on here. Your Honor is absolutely correct. If there are on occasion, not many that I've run into, if there are defendants who have sufficient funds to pay both the full forfeiture judgment and the restitution obligations, the government takes the position that both are collectible. And so if there was some sort of argument that, you know, if there was some sort of argument in that respect that, you know, here they shouldn't be keeping the money because that wouldn't really seem to me to be the defendant. It's almost like the defendant wouldn't have standing for that. That would be the victims, it would seem like, would be able to come and say, we want to get. Can the victims come and say, we want that money? So there's a separate, so there's an entire separate procedure that's not at issue here. Victims who have ownership interests in forfeited funds can file a third-party petition in the district court under Federal Rule Procedure 32-2 and say, I have a superior ownership interest. The district court. Essentially took my money when you went forfeited. Yes. Yes. And 21 U.S.C. 853-N. And victims can file a petition in the criminal proceeding and say, we have an ownership interest in that money. District court, here's the proof. Order it back to us. There were no third-party petitions filed in this case. So, and again, forfeiture is not even under review. And they're not worried because they're guaranteed by the SBA, right? So they're going to. So I think the answer that I understand is, many victims just prefer to await the government's working through its restoration and remission processes that are detailed in the asset forfeiture manual. It's entirely administrative. You don't need a lawyer. You don't need to initiate litigation. And it's an ordinary process that there's an entirely separate office that just processes these in the ordinary course. But the question here is, is Mr. Shibley entitled to an offset? No. The victims have not received any funds. And this court has said in multiple published opinions that a defendant is not entitled to an offset. There's no right to credit against restitution against any part of funds that have been forfeited, but not restored to the victims. So once they're restored, he's entitled to an offset. Right. And the government uses the procedures that the district court sets up in place to remit. The custodian remits the money again to the district court clerk, and that office then provides the money to the victims and does the accounting to credit the outstanding judgment. Unless there are any additional questions, the government asks that the panel affirm. Thank you, counsel.  Ms. Jones, we'll give you a couple. I think we took you over. We'll give you a couple minutes for rebuttal. Thank you, Judge Van Dyke. And your question got to the heart of my concern for my client is, let's just trust the government to do what they're going to say. I am asking this court to just make the government do what they're going to say. Now, Carter, as my opposing counsel. It's almost a ripeness. I mean, I'm not sure that we have that power because of the second question, but it's almost a ripeness concern. You're basically wanting us to come in and order the government to do what it's already said it's going to do. I would disagree. Do you really not think they're going to do what they've said they're going to do? Well, what they've said and represented in their briefing, as I believe you, Judge Fletcher, pointed out, is they could change their mind. They don't have to do this. And in cases where they've said there's no forfeiture funds available, like in Bright, the court says, you know, there's no offset there, but we're not deciding whether or not a defendant ever gets offsets. That's never been decided by this court. Well, what I understand the government will have committed is to say that if and when we pay the victims, that money will be offset and credited to your client. And then they've said our policies are to do that, but I'm not sure we can force the government to reimburse the victims. Maybe the victims can force them to do it, but I'm not sure we can force them to do it. But what they've told us is that if we do it, your client gets the benefit of it. I think what I'm asking for the court to look at is in situations very, very narrowly, when there's a situation where the government has made a promise, not in Bright where they said, no, we're not using forfeiture to make the victims whole, but here where they're making a promise very narrowly, you can say, government, do what you said you're going to do. And I liked your suggestion, Judge Fletcher. If it can be unpublished, we don't care. But if you can lay out this is what the government has promised to do and it would. But that's what the government said they would do. You can say that. I mean, that's true. That's what they said they were going to do. But I think the most important thing is here is that by inference, the fact that the court in Bright said we don't decide offsets today infers that this court has the power to decide offsets in certain narrow circumstances. And that's what I'm asking for today. I don't know if that necessarily follows. I mean, all the time we'll say we're not going to reach this really hard question about whether we can do A or not do A because we don't want to reach it. So the fact that they didn't reach it there doesn't mean we have or don't have that authority. I'm arguing otherwise for the benefit of Mr. Shibley, if Your Honor can understand that. Let me just jump in before we keep you all mourning. But I would love the opportunity to tell the federal government that it has to abide by its promises. But Judge Van Dyke said something that I've been thinking throughout this entire proceeding, which is I mean, is this an even ripe question at this point? So my question to you is do you feel like you, Mr. Shibley, or the victims would be foreclosed from seeking relief from the district court if the government does not follow the CFRs and the other law that it's required to follow, such that this court needs to act now? I can rephrase the question if you'd like me to. No, if I understand your question, does Mr. Shibley have standing to challenge this after this proceeding is finalized? That's part of it. I would hope that he would have standing because he does have a direct stake in the outcome. It's him who's supposed to pay back the restitution. But I mean, let's just say that the wheels of the federal government turn very slowly and it's 18 months or 24 months from now the government does repay the banks from the funds. At that point, can't Mr. Shibley seek relief from the district court if he's not given those credits at the clerk's office level? Based on what my opposing counsel just represented, it sounds like there are mechanisms. We in the Federal Defender's Office, and I'm private counsel, but here by CJA appointment could find no mechanism where that would happen. And I think that's our worry is as opposing counsel pointed out, and the question came from your honors, that, well, the government could change its mind and keep the funds of the lenders. And I see the caveat with under a PPP loan structure that the lenders will be guaranteed and made whole at some point, but that I don't believe under the case law will affect Mr. Shibley. So my job is to try to do what I can for Mr. Shibley for a guarantee when he comes out that he doesn't have what the government has promised, which is paying the lenders back, a reduced restitution obligation. And so one of the things that was pointed out by my opposing counsel in his brief had to do with that no district court can tell the government what to do with forfeited funds. And they cite out-of-circuit authority from the 11th Circuit and the 8th Circuit. They don't cite 9th Circuit authority. They don't cite Supreme Court case authority. And that makes it an issue of first impression where you can, and I believe and I would argue, and I know Judge Van Dyck, you're not quite with me on this, but that you have the authority to just make the government comply to its word of what it's promised. Now, had they said in Bright, and we've gone over this, we don't have to do this. We're keeping all the forfeited funds. Victims, you're on your own. Mr. Shibley, you're on the hook. I want to make sure what we're talking about with the government's promise. As I read the government's brief, it's promised that if it pays, it will give an offset. And they've talked about the mechanism by which that happens. I don't know if I saw that the government has guaranteed that it will actually. Are you saying that they have actually promised that? Yes, at ER-6, if you look at their briefing, why the final forfeiture order should not go into place, should not have a stay against it, and we didn't. The final forfeiture order came after I came onto this case. We didn't challenge that for all the reasons that for you, Judge Lombardi, you asked that question right on. But instead, I think where we're trying to get to, I sort of lost my train of thought on that question. What I'm trying to make clear is, has the government actually promised that they will take these forfeited monies and use them for restitution? Thank you, Judge Van Dyke. ER-6, what they say to Judge Kuhnauer in the district court is any stay of enforcement would impede the victim's ability to apply for the forfeited funds to make them whole. But that's not exactly them guaranteeing that they're like that. Those are words of the government that I'm inferring that they could have said to the district court again. I know I'm relying a lot on Bright for this proposition. But they could have said, this is forfeiture. This is the penalty. This is what he obtained. This is what he controlled. To be clear, because we're taking way over, but that's the best that you've got as far as, and maybe that's enough, but is that the best you've got as far as the government guaranteeing that they will take these forfeited funds and use them? Yes, because it's so different than Bright. Well, but I thought I heard the government tell us that that is what they're going to do. Maybe the government can say that isn't what I said, but I think that's what the government told us. So I'd have to go back and look, because I thought maybe I heard them say that. Well, we can ask the government right now. But as I heard the government, they said we will give those funds to the victims. Let's make this clear since we're here. We'll go ahead and hear from the government. This is a little odd, but I guess I haven't presided very much. This is kind of fun. Let's go ahead and have the government come off a second and make sure we're clear. I want to know specifically, I think you promised, certainly in your briefing and this morning, that if you do pay the money, they'll get an offset. The other question is, A, have you promised that? Secondly, are you promising that you will actually use the forfeited money for restitution? Your Honor, good morning again. We have promised the first. We have not promised the second. And I can be exactly clear. I misunderstood you there. I can clarify for the record, and I may have spoken too quickly. The prosecutors in this case, in the event that this court affirms, will initiate the restoration process, which seeks approval from a separate department office called the Money Laundering and Asset Forfeiture Section for this restoration process. That is the office that reviews the documents, sees if the case complies with the regulations, and then will either approve or disapprove the restoration. As a prosecutor in this case, I cannot bind that office. I can only say that we will initiate that process and ask for it. You will initiate and ask that that be done? Correct, Your Honor. And that is all outlined in Chapter 19 of the Asset Forfeiture Manual about how we do it. Thank you, Counsel. That's helpful. I think that's all the questions we have, but I want to make sure. Did you have any response at all, Ms. Jones? No, Your Honor, and I really appreciate the extra time to answer your questions. Thank you. Thank you to both counsel, and the case is submitted. The court will be in recess until tomorrow, and we're done.
judges: FLETCHER, VANDYKE, Liburdi